**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JIMMY HONORIO G.C.,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DAVID EASTERWOOD, Field Office Director of Enforcement and Removal Operations, Saint Paul Field Office; and JOEL BROTT, Sherburne County Sheriff, Warden of Sherburne County Jail,

Respondents.

Case No. 26-CV-4568 (NEB/ECW)

ORDER ON HABEAS PETITION

---

This matter is before the Court on Petitioner Jimmy Honorio G.C.'s Petition for a Writ of Habeas Corpus. (ECF No. 1 ("Pet.").) Jimmy Honorio G.C. is a citizen of Ecuador who entered the United States without inspection more than two years ago. (*Id.* ¶ 2.) He encountered ICE at the border and was detained and subsequently released on a Form I-220A Order of Release on Recognizance ("OREC"). (*Id.* ¶ 2; ECF No. 1-4.) Jimmy Honorio G.C. later filed an application for asylum which is pending with the immigration court. (Pet. ¶ 3.)

On October 5, 2026, ICE was conducting enforcement operations in New Brighton when they noticed an individual approaching a car. (ECF No. 7-1, at 2.) ICE ran the license plate, which revealed that the car was registered to Petitioner Jimmy Honorio G.C., who lacked lawful status. (*Id.*) Records revealed conflicting reported home

addresses for Petitioner. (*Id.*) After a brief interaction and confirming his identity, ICE arrested him. (*Id.*) A Form I-200 Warrant of Arrest was issued. (*Id*; ECF No. 7 ¶ 6-7; ECF No. 7-3.)

Petitioner filed this habeas action challenging his detention.

**ANALYSIS**

## I. Lawfulness of Arrest

"Like any federal agency, ICE 'literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute.'" *Luis A.S. v. Easterwood*, No. 26-CV-2447 (PJS/DTS) (D. Minn. May 26, 2026), ECF No. 9, at 2 (quoting *Fed. Election Comm'n v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1649 (2022)). The Immigration and Nationality Act provides two mechanisms by which "it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, under 8 U.S.C. Section 1357(a)(2), ICE has "limited authority" to make warrantless arrests. *Arizona*, 567 U.S. at 408.

Petitioner argues that he was arrested without a warrant and that ICE had no basis to conduct a warrantless arrest. (Pet. ¶¶ 8, 51–61.) The Court understands Respondents to assert that Petitioner was arrested under a valid I-200 warrant; indeed, the record includes a warrant that states it was served in New Brighton on October 5. (ECF No. 6, at 5; ECF No. 7-3.) But the record also shows that ICE issued and served this warrant *after* agents encountered Petitioner, spoke with him briefly, then handcuffed him. (ECF Nos. 7 ¶¶ 6–7; 7-3.) This order of events matters. It seems clear to this Court that Jimmy Honorio

G.C. was under arrest at the moment he was placed in handcuffs. *See Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026) (concluding that petitioner was under arrest when he was handcuffed and placed in an ICE vehicle). Indeed, in a declaration submitted to this Court, a deportation officer acknowledges that "officers approached Petitioner, identified themselves as immigration officers, verified Petitioner's identity, and *placed him under arrest*." (ECF No. 7 ¶ 6 (emphasis added).) And yet, ICE did not issue a warrant until after Petitioner was in handcuffs and the arrest had been effectuated. Courts in this district have repeatedly underscored that the order of ICE's actions matter. For example, in *Venancio P.J.*, ICE arrested the petitioner and did not issue a warrant until later that day. 2026 WL 1862252, at *2. While Respondents in that case argued that this was merely "a 'defect in the paperwork sequence,'" the court concluded that "It is more accurate to call it a warrantless arrest." *Id.; see also Abudlai S. v. Blanche*, No. 26-CV-03942 (KMM/LIB), 2026 WL 3205955, at *4 (D. Minn. Oct. 26, 2026) (determining that an arrest was warrantless based on record evidence that petitioner was "escorted to a processing room . . . informed that he [w]as under arrest, and then the Form I-200 warrant was issued"). Because Petitioner was arrested first and the warrant was issued later, Petitioner's arrest was functionally warrantless.

Thus, the next question is whether the warrantless arrest was nonetheless lawful. *See, e.g., Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026); *see also Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026); *Jesus F.D. v. Mullin*, No. 26-CV-2486 (PJS/DTS), ECF No. 10, at 6–7 (D. Minn. June 10, 2026).

Section 1357(a)(2) authorizes an immigration officer to effectuate a warrantless arrest of a noncitizen "if he has reason to believe that the alien so arrested is in the United

States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Courts construe "reason to believe" to mean "constitutionally required probable cause." United *States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Respondents do not argue that they had the authority to effectuate a warrantless arrest of Petitioner, and the Court agrees with Petitioner's argument that they lacked such authority. (Pet. ¶¶ 8, 51–61.) While the record establishes that ICE had probable cause to believe that Petitioner was in violation of immigration laws at the time of his arrest, Respondents must also have "reason to believe" that he "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Respondents had no such belief.

Courts have interpreted "likely to escape" as meaning "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006-07 (N.D. Ill. 2016)). The question, therefore, is not just whether the person is likely to remain and be found at the location of the initial encounter but whether ICE will be able to arrest the person at "another clearly identifiable location." *Walther Ademir A. S. v. Blanche*, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-CV-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)). Respondents have not asserted that they would have been unable to arrest Petitioner at "another clearly identifiable location," nor does the record demonstrate that to be the case. Agents encountered Petitioner as he was walking to his car outside his residence. (Pet. ¶¶ 4, 42–44; ECF No. 7 ¶ 6.) When ICE ran his vehicle information in their records, it included a listed address for that location. (ECF No. 7-1, at 2.) Records also show that Petitioner had been attempting to maintain address records with the immigration court

and ICE. (*Id.*; Pet. ¶ 44.) The Court therefore concludes that Respondents did not have probable cause to conclude that Petitioner was "likely to escape" when they executed a warrantless arrest. In similar situations when officers violate 8 U.S.C. § 1357(a)(2), this Court has ordered immediate release as a remedy. *Ahmed S. v. Blanche*, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *7 (D. Minn. July 10, 2026) (collecting cases). The Court concludes that is the appropriate remedy here and orders Petitioner's immediate release.

## II. Additional Grounds for Release

Release is also warranted on additional grounds. When Petitioner was previously detained upon entering the country, he was later released under an OREC on January 31, 2024. (ECF No. 1-4.) He now asserts that this OREC was never "formally cancelled." (Pet. ¶ 44.)

Again, an agency must follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Department of Homeland Security regulations authorize revocation of release from custody (here, revocation of an OREC) only at the "discretion of the district director, acting district director, deputy director, assistant director for investigations, assistant director for detention and deportation, or officer in charge (except foreign)." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

Section 236.1(c)(9) gives the government "immense discretion" to revoke a noncitizen's OREC. *Yandri Joselito F.E. v. Blanche*, No. 26-cv-3835 (LMP/DTS), 2026 WL 2676764, at *2 (D. Minn. Sept. 11, 2026) (quoting *Sandhu v. Mullin*, No. 7:26-CV-5009, 2026 WL 1146643, at *4 (D. Neb. Apr. 28, 2026)). That discretion, however, is cabined by two conditions. First, an official must actually exercise discretion to revoke the OREC—that is, an official must be aware of the OREC and make the decision to revoke it. *Id.* Second, that official must be one of the six enumerated officials listed in 8 C.F.R. § 236.1(c)(9). *Id.*;

*see also Sandhu*, 2026 WL 1146643, at *4 ("[A]s the regulation shows, that discretion [to revoke parole] must be exercised by someone. Here, there is no evidence [one of the six enumerated DHS officials] exercised discretion to revoke Sandhu's conditional parole." (citing 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9))).

Respondents have provided no evidence that the OREC was ever revoked. In other words, there is nothing demonstrating that any official actually exercised discretion in accordance with 8 C.F.R. § 236.1(c)(9). Because ICE failed to comply with its own regulations, Petitioner's detention is unlawful, and immediate release is warranted. *See, e.g.*, *Kevin J.R.M. v. Blanche*, No. 26-CV-03122 (KMM/JFD), ECF No. 13, at 15 (D. Minn. July 17, 2026), *report and recommendation adopted*, ECF No. 14 (D. Minn. Aug. 3, 2026) (ordering petitioner released whose OREC was not properly revoked); *Yandri*, 2026 WL 2676764, at *2-3 (similar); *Sao V. v. Mullin*, No. 26-CV-2520 (ECT/JFD), 2026 WL 1678692, at *1-3 (D. Minn. June 10, 2026) (granting release when ICE failed to follow its own regulations when re-detaining someone previously released on an order of supervision).

**CONCLUSION**

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED;

2. Respondents are ORDERED to release Petitioner from custody:

    a. Immediately;

b. Inside the State of Minnesota with at least 8 hours' notice to Petitioner's attorney; and

c. With all of Petitioner's personal effects within Respondents' possession or control, including, but not limited to, his driver's license, immigration paperwork, work authorization, cell phone, keys, clothing, personal effects; and

3. Respondents are ORDERED to file a status update with the Court acknowledging the release of Petitioner with his personal effects.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 10, 2026

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge